124 S.W.3d 237 (2003)
In the Interest of S.J.G., A Child.
No. 2-02-451-CV.
Court of Appeals of Texas, Fort Worth.
October 9, 2003.
Rehearing Overruled December 11, 2003.
*239 Swanda & Swanda, P.C., Dean Swanda, Arlington, for Appellant.
Kelly Bradford, Fred M. Barker, County Attorney's Office of Parker County, Weatherford, for Appellee.
PANEL B: DAY, LIVINGSTON, and WALKER, JJ.

OPINION
SAM J. DAY, Justice.

I. INTRODUCTION
Appellant R.H. appeals from the trial court's order terminating his parental rights to S.J.G. In seven issues, Appellant claims that section 263.405 of the Texas Family Code violates his due process and equal protection rights under the United States Constitution; the trial court lacked jurisdiction because the Texas Department of Protective and Regulatory Services (TDPRS) failed to procure a written order within fourteen days after the hearing in which the trial court orally terminated Appellant's rights; and the evidence is factually insufficient to support the findings under section 161.001(1)(D), (E), (L), and (Q) of the family code. TEX. FAM.CODE ANN. §§ 161.001(1)(D), (E), (L), (Q); 263.405 (Vernon 2002). We affirm.

*240 II. FACTUAL BACKGROUND
After Appellant pleaded guilty to sexually assaulting S.J.G. and was sentenced to thirty-five years' confinement, the State petitioned the county court to terminate Appellant's parental rights over S.J.G. S.J.G. was six years old at the time the court terminated Appellant's parental rights. Appellant argued at the termination hearing that he was fooled into pleading guilty and that he had never sexually assaulted S.J.G. Appellant further claimed that he did not remember making a voluntary oral confession to the police. Appellant stated that he had been drinking at the time the confession was made and that he did not remember the entirety of his conversation with the police.
The evidence shows that Appellant made the confession and was not under arrest at the time. Appellant further stated in his second interview with the police that he was living with two roommates and that these two men might have sexually assaulted S.J.G. and then attempted to frame him for the crime. Based on Appellant's guilty plea, his voluntary confession, and other evidence, the trial court terminated Appellant's parental rights.

III. THE REQUIREMENTS OF SECTION 263.405
In his first issue, Appellant asserts that a statement of points under family code section 263.405(b) "is not a jurisdictional requirement and is not needed for purposes of preserving error on appeal." Tex. Fam.Code Ann. § 263.405(b). Appellant alternatively contends in his second issue that if a statement of points is required to preserve error, then section 263.405(b), as applied to the present facts, violates his due process and equal protection rights under the United States Constitution. The TDPRS, on the other hand, contends that Appellant waived all nonjurisdictional issues, including the factual sufficiency issues he raises in his fourth through seventh issues, by failing to file a statement of points pursuant to family code section 263.405(b). Id. We have previously held that a party who files a statement of issues under section 263.405(b), but fails to include a particular issue, does not waive that issue on appeal unless the opponent shows prejudice. See In re W.J.H., 111 S.W.3d 707, 712 (Tex.App.-Fort Worth 2003, pet. filed) (holding that strict compliance with section 263.405(b) is not required to bring an issue on appeal). We left open the question of whether the absolute failure to file a statement of points would waive a nonjurisdictional issue on appeal. Id. We will answer that question today.[1]
Statutory interpretation is a question of law. In re Canales, 52 S.W.3d 698, 701 (Tex.2001). Our primary goal is to ascertain and effectuate the legislature's intent. Albertson's, Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex.1999). In doing so, we begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865-66 (Tex. 1999). To ascertain legislative intent, however, we must look to the statute as a whole and not to its isolated provisions. Morrison v. Chan, 699 S.W.2d 205, 208 (Tex.1985); Tex. Dep't of Banking v. Mount Olivet Cemetery Ass'n, 27 S.W.3d 276, 283 (Tex.App.-Austin 2000, pet. denied). *241 In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act. Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex.2001). We may also consider, among other things, the statute's objectives; common law, former law, and similar provisions; and the consequences of the statutory construction. Tex. Gov't Code Ann. § 311.023(1)-(7) (Vernon 1998); Canales, 52 S.W.3d at 702.
It is a well-settled rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. In re Bell, 91 S.W.3d 784, 790 (Tex.2002) (quoting Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.1981)). Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. Id. This rule complements another general statutory construction principle that courts should not insert words into a statute except to give effect to clear legislative intent. Id. (citing Laidlaw Waste Sys., Inc. v. City of Wilmer, 904 S.W.2d 656, 659 (Tex.1995)).
Moreover, a court of appeals should presume the legislature intended a just and reasonable result in enacting a statute. In re D.R.L.M., 84 S.W.3d 281, 290 (Tex.App.-Fort Worth 2002, pet. denied). An appellate court should not construe a statute in a manner that will lead to a foolish or absurd result when another alternative is available. Id.
Section 263.405 of the family code provides, in pertinent part:
(a) An appeal of a final order rendered under this subchapter is governed by the rules of the supreme court for accelerated appeals in civil cases and the procedures provided by this section. The appellate court shall render its final order or judgment with the least possible delay.
(b) Not later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on which the party intends to appeal. The statement may be combined with a motion for a new trial.
(c) A motion for a new trial, a request for findings of fact and conclusions of law, or any other post-trial motion in the trial court does not extend the deadline for filing a notice of appeal under Rule 26.1(b), Texas Rules of Appellate Procedure, or the deadline for filing an affidavit of indigence under Rule 20, Texas Rules of Appellate Procedure.
(d) The trial court shall hold a hearing not later than the 30th day after the date the final order is signed to determine whether:

(1) a new trial should be granted;
(2) a party's claim of indigence, if any, should be sustained; and
(3) the appeal is frivolous as provided by Section 13.003(b), Civil Practice and Remedies Code.
(e) If a party claims indigency and requests the appointment of an attorney, the court shall require the person to file an affidavit of indigency and shall hear evidence to determine the issue of indigency. If the court does not render a written order denying the claim of indigence or requiring the person to pay partial costs before the 36th day after the date the final order being appealed is signed, the court shall consider the person to be indigent and shall appoint counsel to represent the person.....

*242 (g) The appellant may appeal the court's order denying the appellant's claim of indigence or the court's finding that the appeal is frivolous by filing with the appellate court the reporter's record and clerk's record of the hearing held under this section, both of which shall be provided without advance payment, not later than the 10th day after the date the court makes the decision. The appellate court shall review the records and may require the parties to file appellate briefs on the issues presented, but may not hear oral argument on the issues. The appellate court shall render appropriate orders after reviewing the records and appellate briefs, if any.
(h) Except on a showing of good cause, the appellate court may not extend the time for filing a record or appellate brief.
TEX. FAM.CODE ANN. § 263.405(a), (b), (c), (d), (e), (g), (h). (emphases added).
A statutory construction analysis begins with a review of the plain language of section 263.405 as a whole, refusing to focus on only isolated words, phrases, and sections, but instead looking to the act as a whole. See Meritor Auto., Inc., 44 S.W.3d at 90. This review makes it clear that the legislature's intent in enacting family code section 263.405 was to provide a mechanism to reduce frivolous parental-termination appeals and to reduce post-judgment appellate delays in parental-termination appeals. See D.R.L.M., 84 S.W.3d at 290. The obvious purpose of subsection (b)'s statement of points is to enable the trial court to determine whether under subsection (d) an appeal from a judgment terminating an individual's parental rights is frivolous. Tex. Fam.Code Ann. § 263.405(d). A trial court would have no way of complying with subsection (d)'s requirement to "hold a hearing not later than the 30th day after the date the final order is signed to determine whether ... the appeal is frivolous " except by reviewing the statement of points filed by the appellant. Id. (emphasis added). Under section 263.405(g), a statutory scheme setting time limits for filing the reporter's record exists for the parent to appeal the trial court's determination that the appeal is frivolous. Id. § 263.405(g). And subsection (h) requires a party to show good cause to obtain a briefing extension. Id. § 263.405(h). Thus, viewing section 263.405 as a whole, the apparent legislative intent behind the statutory statement of points requirement is to give the trial court some way to determine whether an appeal is frivolous and thereby eliminate unmeritorious parental-termination appeals. Id. § 263.405(d).
Looking to section 263.405's objectives and to similar provisions, these factors also support the conclusion that the legislature did not intend for the failure to file a statement of points to constitute a waiver of all nonjurisdictional defects on appeal. See Tex. Gov't Code Ann. § 311.023(1)-(7). Section 263.405's objectives are to address post-judgment delays, correct provisional inconsistencies, and provide a mechanism through which a party can compel the trial court to timely set the case for final trial. D.R.L.M., 84 S.W.3d at 290. Section 263.405 accomplishes the legislature's intent to address post-judgment delays in parental-termination appeals by making them accelerated under rule 28.1 of the rules of appellate procedure. Tex. Fam. Code Ann. § 263.405(a); Tex.R.App. P. 28.1. The statute also reduces post-judgment delays in parental-termination appeals by providing that no post-trial motions will be effective to extend the time to file a notice of appeal in a parental-termination case. Tex. Fam.Code Ann. § 263.405(c). The *243 statute prohibits the appellate court from granting briefing extensions in a parentaltermination appeal absent a showing of good cause, reducing post-judgment delays in parental-termination appeals. Id. § 263.405(h). Finally, section 263.405 reduces post-judgment delays in parentaltermination appeals by authorizing the trial court to weed out frivolous parentaltermination appeals. Id. § 263.405(d), (g). The parent may then appeal the frivolousness determination instead of the underlying case. Id.
Accordingly, section 263.405 focuses on reducing some time period involved in parental-termination appeals, from final judgment through final appellate disposition, or on reducing post-judgment delays by having the trial court make a preappeal determination as to whether the appeal is frivolous. Construing noncompliance with subsection (b) as a waiver of all nonjurisdictional appellate issues does not reduce any post-judgment appellate time period and does not weed out frivolous parental-termination appeals. Appellant's appeal would have taken the same amount of time to be submitted to this court regardless of whether he had waived nonjurisdictional defects. Furthermore, we do not know whether Appellant's appeal is frivolous because the trial court never made a frivolousness determination.
A plain reading of section 263.405 as a whole demonstrates that the legislature intended that a parent whose parental rights have been terminated receive either: (1) a normal accelerated appeal, unlimited by his statement of points, after a finding by the trial court that the appeal is not frivolous; or (2) an appeal from the trial court's determination that the appeal is frivolous. Id. § 263.405(b), (d). Therefore, we hold that under the facts of this case, Appellant's failure to file a statement of points is not a jurisdictional defect that prevents this court from addressing his issues on appeal.[2] We sustain Appellant's first two issues to the extent they presumed his appeal was so constrained. As a result of this disposition, we need not reach Appellant's constitutional challenges to the family code.

IV. JURISDICTIONAL CHALLENGE
Appellant alleges in his third issue that the trial court lost jurisdiction fourteen days after the TDPRS took possession of S.J.G. because the trial court did not sign the order terminating Appellant's rights until over a month after the TDPRS took temporary possession of S.J.G. Appellant claims that the trial court failed to follow the mandates of section 262.201(c) of the Texas Family Code. Tex. Fam.Code Ann. § 262.201(c). Appellant argues that the trial court's alleged failure to issue an appropriate temporary order required under section 262.201(c) deprived the trial court of jurisdiction and that all orders after the trial court lost jurisdiction are void.
We have recently ruled that section 262.201 is procedural and not jurisdictional. See In re J.M.C., 109 S.W.3d 591, 594 (Tex.App.-Fort Worth 2003, no pet) (holding that no requirement under section 262.201 deprives a trial court of jurisdiction simply because a temporary possession order has expired); see also In re E.D.L., 105 S.W.3d 679, 688 (Tex.App.-Fort Worth 2003, pet. filed) (holding that the fourteen-day requirement for a hearing over termination once the State has *244 temporarily taken custody of the child in issue is procedural in nature and does not deprive the trial court of jurisdiction). Therefore, we overrule Appellant's third issue.
V. FACTUAL SUFFICIENCY OF THE EVIDENCE
In Appellant's fourth through seventh issues on appeal, he claims that the evidence was factually insufficient to support the findings under section 161.001(1)(D), (E), (L), and (Q). Tex. Fam. Code Ann. § 161.001(1)(D), (E), (L), (Q). A parent's rights to "the companionship, care, custody and management" of his or her children are constitutional interests "far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." In re C.H., 89 S.W.3d 17, 26 (Tex.2002). In a termination case, the State seeks not just to limit parental rights but to end them permanentlyto divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (Vernon 2002); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. Holick, 685 S.W.2d at 20-21; In re D.T., 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied) (op. on reh'g).
In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984); Swate v. Swate, 72 S.W.3d 763, 766 (Tex.App.-Waco 2002, pet. denied). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).
Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex.1980). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. G.M., 596 S.W.2d at 847; D.T., 34 S.W.3d at 630. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam.Code Ann. § 101.007 (Vernon 2002).
This higher burden of proof in termination cases alters the appellate standard of factual sufficiency review. C.H., 89 S.W.3d at 25. "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." Id. In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. Id. *245 Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the conduct provisions of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. Id. at 28.
The trial court found that termination was appropriate in this case under section 161.001(1)(D), (E), (L), and (Q). The relevant parts of this section state:
The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
(1) that the parent has:
....
(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
....
(L) been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following Penal Code sections:
....
(iv) Section 21.11 (indecency with a child);
....
(viii) Section 22.021 (aggravated sexual assault);
(ix) Section 22.04 (injury to a child, elderly individual, or disabled individual);
[or]
....
(Q) knowingly engaged in criminal conduct that has resulted in the parent's:
(i) conviction of an offense; and
(ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.
TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (L), (Q).
The evidence at trial showed that Appellant had repeatedly sexually assaulted his four-year-old daughter. Dana Perry, an investigator for the TDPRS, testified regarding an outcry statement made by S.J.G. S.J.G. told Perry that Appellant put "his butt" in her butt and in her mouth and also put his mouth on her butt. Perry further testified that when S.J.G. used the word "butt" to describe Appellant's body parts, it referenced Appellant's penis.
Chris Crawford was a detective with the Weatherford Police Department and interviewed Appellant about the charges of sexual assault at Child Protective Services. Appellant told Crawford about the abuse in detail. Appellant said that he had put his penis in S.J.G.'s mouth ten times or less and put his finger in her anus on at least two occasions. Appellant further confessed that he had S.J.G. masturbate him on a number of occasions. Appellant stated that over the three-month period in which S.J.G. lived with him, he had sexually assaulted her eight times. Appellant stated that he just could not overcome his urges, in response to Crawford's questioning him as to why he did it. At Appellant's criminal trial for aggravated sexual *246 assault of a child, he pleaded guilty and received a thirty-five year sentence.
Appellant points to evidence in the record that he claims contradicts the State's proof at trial. Appellant claims that he was "in the middle of filing" a petition for writ of habeas corpus and that this writ could result in the reversal of his conviction. Appellant states that he does not remember confessing to Crawford but that he might have done so because he was drunk during that period of time. Regardless of whether Appellant confessed to the crime, he claims that he did not do it. Appellant then alleges that he was forced to plead guilty by his lawyer at the criminal trial. Appellant further claims that his testimony in this case showed that someone else abused S.J.G. because she was having nightmares when he first got custody of her and before the alleged assaults occurred. Although this evidence contradicts some of the State's evidence introduced at trial, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. In re D.G., 5 S.W.3d 769, 771 (Tex.App.-San Antonio 1999, no pet.). In cases where there is conflicting evidence, we will defer to the trier of fact's judgment on which testimony to believe and which testimony to disbelieve. Id. The trial court, acting as the trier of fact, chose to believe the State's witnesses and to disbelieve Appellant's testimony.
We hold that the evidence is factually sufficient to prove by clear and convincing evidence that Appellant knowingly placed S.J.G. in conditions or surroundings that endangered her physical and emotional well-being and that Appellant engaged in conduct that endangered S.J.G.'s physical or emotional well-being. See TEX. FAM. CODE ANN. § 161.001(1)(D), (E). These two grounds were sufficient to justify the judgment in this case. Therefore, we overrule Appellant's fourth and fifth issues. Having determined that factually sufficient evidence exists to support termination under section 161.001(1)(D) and (E), we need not address Appellant's sixth and seventh issues. See Tex.R.App. P. 47.1.

VI. CONCLUSION
Having determined that the trial court had jurisdiction over the proceedings and that the evidence was factually sufficient to support the trial court's termination of Appellant's rights, we affirm the trial court's judgment.
NOTES
[1] We note that we may also address Appellant's nonjurisdictional issues in the interest of justice. See Hinkle v. Adams, 74 S.W.3d 189, 194 (Tex.App.-Texarkana 2002, no pet.) (holding that even though issue was improperly briefed, court would review it in the interest of justice).
[2] The consequences of a contrary construction would be to build an ineffective assistance of counsel claim into termination cases where no statement of points is filed. See In re M.S., 115 S.W.3d 534, 550 (Tex. 2003) (recognizing statutory right to effective assistance of counsel in termination cases).